UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X
                               :

TYREE DANIELS,                          :

                  Plaintiff,       :

                                 :             22-cv-6297 (LJL)

       -v-                        :

                                 :           OPINION AND ORDER

KILOLO KIJAKAZI,              :

                                 :

                  Defendant.     :

                                 :

------------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__6/8/2023__

LEWIS J. LIMAN, United States District Judge:

      Defendant Kilolo Kijakazi ("Defendant") moves, pursuant to Federal Rule of Civil

Procedure 12(b)(6), to dismiss the complaint against him.  Dkt. No. 55.  *Pro se* Plaintiff Tyree

Daniels ("Plaintiff") has not submitted papers in opposition to the motion.  For the following

reasons, the motion is granted in part and denied in part.

## BACKGROUND

      The Court accepts as true the allegations of the *pro se* complaint, Dkt. No. 1, and reads

them broadly and liberally to state the strongest arguments they suggest.  Plaintiff alleges the

following facts.

      Plaintiff was an employee of the United States Social Security Administration ("SSA").

*Id.* ¶ 1.  He began his employment with SSA on or about April 27, 2009.  *Id.* ¶ 4.  Prior to

October 2018, he was employed at the Great Lakes Program Service Center in Chicago, Illinois,

SSA's Downtown-Atlanta District Office, SSA's Chicago-South District Office, and SSA's

Marietta, Georgia District Office.  *Id.* ¶¶ 4–7.

On or about October 1, 2018, Plaintiff transferred to SSA's Manhattan Social Security Card Center in New York City.  *Id.* ¶ 8.  At the time, the District Office Manager there was Eno Ikoli and the District Office operations supervisor was Ines Vasquez.  *Id.*

The complaint arises from conduct at that office from February 2019 to May 2019.  On or about February 1, 2019, Plaintiff sent a complaint via email to the management staff at the Manhattan Social Security Card Center about a fraudulent visitor's time-keeping scheme that they encouraged among the employees.  *Id.* ¶ 9.  On or about March 25, 2019, Plaintiff called in to indicate that he would arrive late.  *Id.* ¶ 10.  When he arrived at the office, Vasquez called a meeting with Plaintiff to discuss his having called off work frequently in the weeks since the start of the new year.  *Id.*  To substantiate his absences, Plaintiff reiterated to Vasquez that he had ongoing health issues and reminded her that she did not approve his days off from the weeks prior.  *Id.*  Plaintiff alleges that Vasquez was rude to Plaintiff, both when he telephoned earlier that day to say he would be late and at the meeting.  *Id.*  Plaintiff told Vasquez about her rudeness at the meeting.  *Id.*

Plaintiff called off work from on or about March 26, 2019 to April 1, 2019.  *Id.* ¶ 11.  On or about April 2, 2019, Vasquez called Plaintiff to certify his timesheet but Plaintiff refused because Vasquez placed absence without leave or "AWOL" on his timesheet.  *Id.* ¶ 12.  Vasquez stated that the time sheet could be fixed later, but Plaintiff still protested signing it because he did not agree with the timesheet as stated.  *Id.*

On or about April 4, 2019, Plaintiff filed a grievance against Vasquez for her rude, disrespectful, and unfair behavior towards him.  *Id.* ¶ 13.  Plaintiff alleges that he ultimately "won" his grievance.  *Id.*

On or about April 22, 2019, Plaintiff and his union representative had a meeting with Ikoli concerning his grievance against Vasquez. *Id.* ¶ 14.  Plaintiff told Ikoli that he felt that Vasquez "had been treating him disrespectfully and unfairly for months at that point because she had considered him to be disabled, and that [Vasquez] was being retaliatory against Plaintiff." *Id.*  Plaintiff requested that Ikoli investigate Vasquez for treating him unfavorably due to Vasquez's perception of Plaintiff being disabled.  *Id.*

On or about May 1, 2019, Vasquez issued a "bogus reprimand" against Plaintiff "for hanging up the telephone on her" on March 25, 2019, when he called in late. *Id.* ¶ 15.  Plaintiff alleges that he "never hung up on [Vasquez]." *Id.*  The reprimand, after indicating that Plaintiff hung up on Vasquez, states that Plaintiff's behavior "cannot be tolerated in the work place." Dkt. No. 57-2 at 1.  The reprimand further stated:

> For the reasons cited above, I have decided to reprimand you to promote the efficiency of the Federal service. You are advised that any further instances of misconduct may result in more severe disciplinary action, including suspension or your removal from the Federal service.
>
> You may grieve this decision under the provisions of Article 24 of the expired 2012 National Agreement between SSA and AFGE. Your grievance, if any, must be submitted in writing and presented to me, your Step 1 Grievance Official within fifteen (15) workdays of your receipt of this reprimand. You have the right to be represented when preparing and presenting this grievance.

*Id*. at 2.  The grievance also stated that "a copy of this reprimand will be placed in your Official Personnel Folder and your SF-7B file for up to one year." *Id*.

On or about the same day, Vasquez placed a mid-year review in Plaintiff's records that Plaintiff alleges to be "unfavorable and inaccurate."  Dkt. No. 1 ¶ 15; Dkt. No. 57-3.[1]  The

---

[1] Although Plaintiff did not attach the reprimand and the mid-year review to his complaint, Defendant attached them to the motion to dismiss. *See* Dkt. Nos. 52-2, 52-3.  Those documents are "integral to a complaint in the sense that the plaintiff had actual notice of and relied upon it in framing the complaint." *In re Lehman Bros. Sec. & Erisa Litig*., 799 F. Supp. 2d 258, 273 (S.D.N.Y. 2011).  The complaint relies heavily on their terms and effect, *see Chambers v. Time*

performance review was divided into sections of "Interpersonal Skills," "Participation," "Demonstrates Job Knowledge," and "Achieves Business Results."  Dkt. No. 57-3 at 1–2.  The evaluation stated, *inter alia*, for "Interpersonal Skills" that "when interviewing the public[,] focus your attention to assist the applicant and avoid distraction."  *Id*. at 1.  It also stated that he should "[b]e receptive at all times when communicating with [his] co-workers."  *Id*.  For "Participation," it "encourage[d]" him to "call customers in an efficient and timely manner" and that "[i]t is imperative to limit distractions while interviewing the public."  *Id*.  For "Demonstrates Job Knowledge," it recommended that Plaintiff "[s]trive to familiarize [him]self with the different cases that our office keeps records for."  *Id*.  For "Achieves Business Results," it recommended that he "[s]trive to clear the EAE case assigned to you in a timely manner."  *Id*. at 2.

## PROCEDURAL HISTORY

Plaintiff filed his complaint on December 7, 2020, in the United States District Court for the Northern District of Illinois.  Dkt. No. 1.[2]  On November 12, 2021, Defendant filed a motion to dismiss the case, pursuant to Federal Rule of Civil Procedure 12(b)(3), for lack of venue or, in the alternative, to transfer venue of the case to the Southern District of New York pursuant to 28 U.S.C. § 1406.  Dkt. No. 23.  The United States District Court for the Northern District of

---

*Warner, Inc.*, 282 F.3d 147, 153–54 (2d Cir. 2002), and thus they are "properly considered, albeit not for the truth of the matters asserted," *In re Lehman Bros. Sec. & Erisa Litig*., 799 F. Supp. 2d at 273.  Similarly, the documents are referenced in the complaint, and court may consider them "not for the truth of the matters asserted therein, but only for the fact that the statements were made."  *Long Miao v. Fanhua, Inc*., 442 F. Supp. 3d 774, 781 n.2 (S.D.N.Y. 2020) (citation and internal quotation marks omitted).  *See, e.g.*, *Figueroa v. Garland*, 2022 WL 17539114, at *6, 17 (S.D.N.Y. Dec. 6, 2022) (considering a letter concerning a leave restriction as integral to the complaint); *Franchitti v. Cognizant Tech. Sols. Corp*., 2022 WL 2657171, at *2 (S.D.N.Y. July 8, 2022) (considering a document related to an EEOC charge because "the [c]omplaint makes repeated reference to the charges that Franchitti filed with the EEOC").
[2] The complaint was refiled on September 16, 2021.  Dkt. No. 21.  The two entries are the same in all respects.

Illinois granted the motion to transfer venue on July 6, 2022.  Dkt. No. 44.  The case was

transferred to the Southern District of New York on July 21, 2022, Dkt. No. 45, and assigned to

this Court on July 25, 2022.

On November 7, 2022, Defendant filed this motion to dismiss the complaint pursuant to

Federal Rule of Civil Procedure 12(b)(6), along with a supporting memorandum of law and

attorney declaration.  Dkt. Nos. 55–57.[3]  After Plaintiff failed to file a timely response, the Court

issued an order on March 31, 2023, reminding Plaintiff that there was an outstanding motion to

dismiss and warning him that if he did not file an opposition by April 14, 2023, the motion

would be deemed unopposed.  Dkt. No. 58.  The Court's docket reflects that the order was

mailed to Plaintiff at his last known address on April 3, 2023.  Minute Entry (Apr. 3, 2023).  No

response was submitted.

## LEGAL STANDARD

In considering a motion to dismiss pursuant to Rule 12(b)(6), a court must "accept the

material facts alleged in the complaint as true and construe all reasonable inferences in the

plaintiff's favor."  *Phelps v. Kapnolas*, 308 F.3d 180, 184 (2d Cir. 2002) (citing *Hernandez v.

Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994)).  However, "[t]o survive a motion to dismiss, a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.

Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged."  *Id.*  "To survive dismissal, the plaintiff must provide the grounds

---

[3] On November 1, 2022, Plaintiff applied to this Court for appointment of pro bono counsel.
Dkt. No. 53.  The Court denied that motion on November 2, 2022, without prejudice to renewal
if the case survived a motion to dismiss.  Dkt. No. 54.  In that order, the Court also advised
Plaintiff of the availability of the services of the New York Legal Assistance Group.  *Id.*

upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Communs., Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

The Court is obligated to construe *pro se* pleadings broadly and liberally, interpreting them so as to raise the strongest arguments they suggest. *See Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007); *Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 146 (2d Cir. 2002); *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000).  However, this does not relieve *pro se* plaintiffs of the requirement that they plead enough facts to "nudg[e] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.  Nor does it relieve them of the obligation to otherwise comply with the pleading standards set forth by the Federal Rules of Civil Procedure. *See Saidin v. N.Y.C. Dep't of Educ.*, 498 F. Supp. 2d 683, 687 (S.D.N.Y. 2007). "Thus, the Court's 'duty to liberally construe a plaintiff's complaint is not the equivalent of a duty to re-write it.'" *Davila v. Lang*, 343 F. Supp. 3d 254, 266 (S.D.N.Y. 2018) (quoting *Geldzahler v. New York Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009)).

## DISCUSSION

Plaintiff alleges retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, based on Vasquez's conduct in issuing a "bogus" reprimand and placing an "inaccurate and unfavorable" mid-year review in his file, allegedly "in retaliation for Plaintiff having filed a grievance against [Vasquez]." Dkt. No. 1 ¶¶ 17–18.  Plaintiff alleges that Vasquez issued the reprimand (1) because Plaintiff told Ikoli that Vasquez had been treating him unfairly because Vasquez considered Plaintiff to be disabled and (2) because Plaintiff requested an investigation. *Id.*  In the handwritten complaint attached to his typewritten complaint, Plaintiff also alleges discrimination on the grounds of disability and retaliation in violation of the

Rehabilitation Act, 29 U.S.C. § 701, *et seq.*  Dkt. No. 1 at ECF p. 8.[4]

Defendant argues that Plaintiff's discrimination claim under the Rehabilitation Act should be dismissed because Plaintiff has failed to allege that he suffers from a qualifying disability or that there is any nexus between his claimed disability and any adverse employment action.  Dkt. No. 56 at 9–11.  Defendant also argues that Plaintiff's retaliation claim under the Rehabilitation Act should be dismissed for his failure to allege that he was engaged in protected activity, that any materially adverse action was taken against him, or that there is any nexus between an adverse action and his alleged protected activities.  *Id.* at 11–15.  Defendant finally argues that Plaintiff's retaliation claim under Title VII should be dismissed for the same reasons and also because Title VII does not address disability discrimination and Plaintiff fails to allege discrimination or retaliation on any other basis.  *Id.* at 11–15 & 11 n.4.  The Court first discusses Plaintiff's discrimination and retaliation claims under the Rehabilitation Act.  It then turns to his discrimination and retaliation claims under Title VII.  For the following reasons, the motion to dismiss is granted in part and denied in part.

## I.    Plaintiff's Discrimination Claim Under the Rehabilitation Act

"Claims under . . . the Rehabilitation Act proceed under the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)."  *Jackson v. N.Y.C. Dep't of Educ.*, 768 F. App'x 16, 17 (2d Cir. 2019); *see Stanley v. City Univ. of N.Y.*, 2023 WL 2714181, at *9 (S.D.N.Y. Mar. 30, 2023); *Wein v. N.Y.C. Dep't of Educ.*, 2020 WL 4903997, at *12

---

[4] Although the checked box also plausibly indicates that Plaintiff brings discrimination and retaliation claims under the Americans with Disabilities Act (ADA) as well, Dkt. No. 1 at ECF p. 8, "the ADA does not apply to federal government agencies," *Steinberg v. Vidal*, 2022 WL 16744932, at *1 (E.D.N.Y. Nov. 7, 2022); *see also* 42 U.S.C. § 12111(5)(B), and Plaintiff's claims as a federal employee arise "under the Rehabilitation Act," *Rivera v. Heyman*, 157 F.3d 101, 103 (2d Cir. 1998); *see also Hodges v. Att'y Gen. of U.S.*, 976 F. Supp. 2d 480, 490 (S.D.N.Y. 2013).

(S.D.N.Y. Aug. 19, 2020).  "At the first step, the plaintiff bears the burden of showing, by a preponderance of the evidence, a prima facie case, by establishing that: '(1) his employer is subject to the ADA or Rehabilitation Act; (2) he was disabled within the meaning of the ADA or Rehabilitation Act; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of his disability.'"  *Stanley*, 2023 WL 2714181, at *9 (alterations accepted) (quoting *McMillan v. City of New York*, 711 F.3d 120, 125 (2d Cir. 2013)).  Plaintiff does not allege sufficient facts with respect to the second and the fourth elements to state a claim.

### A.      Plaintiff fails to allege that he has a qualifying disability.

Section 504 of the Rehabilitation Act prohibits "any program or activity receiving Federal financial assistance" or any "program or activity conducted by any Executive agency" from discriminating against an employee "solely by reason of her or his disability."  29 U.S.C. § 794(a).  As relevant here, in order to allege a claim under the Rehabilitation Act, a plaintiff must plead that he or she was subjected to discrimination because of a "qualifying disability." *Smith v. Hogan*, 794 F.3d 249, 253 (2d Cir. 2015).  "A 'qualified individual with a disability' is defined as 'an individual with a disability who . . . meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.'" *Rodriguez v. City of New York*, 197 F.3d 611, 618 (2d Cir. 1999) (quoting 42 U.S.C. § 12131(2)).

The Rehabilitation Act defines a "disabled individual" as one who has (a) "a physical or mental impairment that substantially limits one or more major life activities," (b) "a record of such an impairment," or (c) is "regarded as having such an impairment."  42 U.S.C. § 12102(1). In order to establish a prima facie case under the Rehabilitation Act, then, the plaintiff must fulfill a tripartite test: "[P]laintiff must first show that she suffers from a physical or mental impairment.  Second, the plaintiff must identify the activity claimed to be impaired and establish

that it constitutes a 'major life activity.'  Third, the plaintiff must show that her impairment 'substantially limits' the major life activity previously identified.  In addition, the Supreme Court has recently clarified that the identified major life activity must be 'of central importance to daily life.'"  *Weixel*, 287 F.3d at 147 (internal citations omitted).

Plaintiff fails to allege that he has a qualifying disability.  Even when the complaint is liberally construed, Plaintiff alleges at most that he had "ongoing health issues," Dkt. No. 1 ¶ 10, and that Vasquez considered him to be disabled, *id.* ¶ 14.  In the grievance he filed, he refers to the denial of his "advanced sick leave."  Dkt. No. 57-1 at 1.  None of those statements sufficiently allege a disability within the meaning of the Rehabilitation Act.  *See, e.g.*, *Ibela v. Allied Universal*, 2022 WL 1418886, at *2 (2d Cir. May 5, 2022) ("A diagnosis alone is insufficient to establish disability under the statute."); *Person v. Mulligan Sec. Corp.*, 2023 WL 2652281, at *4 (E.D.N.Y. Mar. 27, 2023) (dismissing a *pro se* plaintiff's claim of disability discrimination under the Americans with Disabilities Act for failure to state a claim, because the allegation of "bad back," "neck," and "testi[cular] cancer removed" were "vague" and "[t]he plaintiff has not identified any specific condition affecting his musculoskeletal system"); *Kalarickal v. McDonough*, 2021 WL 5112907, at *5 (S.D.N.Y. Nov. 3, 2021) (holding that a *pro se* plaintiff failed to allege disability for his discrimination claim under the Rehabilitation Act because the complaint only included "a conclusory allegation that he has a 'shoulder disability'"); *Cain v. Mandl Coll. of Allied Health*, 2016 WL 5799407, at *7 (S.D.N.Y. Sep. 30, 2016) (dismissing a *pro se* plaintiff's claim of disability discrimination under the Rehabilitation Act for failure to state a claim because her complaint "contains no allegations as to how [p]laintiff's PTSD 'substantially limits' one or more of her 'major life activities'").  Here, Plaintiff does not allege that he *actually* suffered from a physical or mental impairment, much

less one that substantially limited a major life activity.  His complaint therefore fails to state a claim for discrimination under the Rehabilitation Act for that reason alone.

      **B.**     **Plaintiff fails to allege that he suffered an adverse employment action under his discrimination claim.**

Plaintiff also complains that Vasquez was rude and disrespectful to him and that he suffered a baseless reprimand and an unfavorable mid-year review.  Dkt. No. 1 ¶¶ 13, 15, 18.  He alleges that he suffered those results because he stated to Vasquez that he had ongoing health issues and that she considered him disabled.  *Id.* ¶ 14.  Those allegations fail adequately plead an adverse employment action and causation for the purposes of a discrimination claim under the Rehabilitation Act.

First, Plaintiff fails to allege an adverse employment action.  The Rehabilitation Act states that "[n]o otherwise qualified individual with a disability . . . , shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination . . . ."  29 U.S.C. § 794(a).  "A plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment."  *Boonmalert v. City of New York*, 721 F. App'x 29, 32 (2d Cir. 2018) (quoting *Kassner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229, 238 (2d Cir. 2007)).  "Examples of adverse employment actions include 'termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significant diminished material responsibilities, or other indices . . . unique to a particular situation.'"  *Bernstein v. New York City Dep't of Educ.*, 2020 WL 6564809, at *4 (S.D.N.Y. Nov. 9, 2020) (quoting *Galabya v. N.Y.C. Bd. Of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000)).  But Plaintiff does not allege anything of that sort.  Nor does he allege anything evincing "an adverse result such as demotion, diminution of wages, or other tangible loss," *id.* at *6 (citation omitted).  Plaintiff alleges that his supervisor

issued an untrue "bogus reprimand" against him and placed an unfavorable and inaccurate mid-year review.  Dkt. No. 1 ¶ 15.  Without an allegation that any of these would result in tangible losses, Plaintiff fails to allege that his supervisor's conduct amounted to adverse employment action.  *See, e.g.*, *Natofsky v. City of N.Y.*, 921 F.3d 337, 352 (2d Cir. 2019) ("[A] negative performance review, without any showing of a negative ramification, cannot constitute an adverse employment action."); *Stanley*, 2023 WL 2714181, at *10 (holding that a supervisor's expression of frustration or an instruction that another should review plaintiff's records did not amount to adverse employment action); *Smith v. N.Y.C. Dep't of Educ.*, 2019 WL 6307471, at *8 (S.D.N.Y. Nov. 22, 2019) (dismissing a *pro se* plaintiff's disability discrimination claims under the Rehabilitation Act, because "[p]laintiff has pled no facts suggesting that he suffered negative consequences as a result of the negative performance reviews").

Plaintiff also does not allege any facts supporting that but for his alleged disability, his employers' actions would not ensue.  "[W]hen a plaintiff alleges an employment discrimination claim under the Rehabilitation Act, the causation standard that applies is the same one that would govern a complaint alleging employment discrimination under the ADA."  *Natofsky*, 921 F.3d at 345.  This "requires a but-for causation standard."  *Id*. at 349.  "At the pleading stage, the plaintiff's burden is 'minimal.'"  *Stanley*, 2023 WL 2714181, at *10 (quoting *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 113 (2d Cir. 2019)).  Plaintiff's conclusory allegation that he *believed* that an employer took actions against him on a proscribed basis does not satisfy the requirement of alleging facts showing that the employer's action was *actually* taken on a proscribed basis.  "Plaintiff's belief that he was discriminated against is insufficient to support the inference of discriminatory motivation."  *Wilkerson v. Metro. Transp. Auth.*, 2021 WL 5761649, at *7 (S.D.N.Y. Dec. 3, 2021); *see also Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 456 (2d Cir. 1999)

("Bickerstaff's feelings and perceptions of being discriminated against are not evidence of discrimination." (alterations accepted and internal quotation marks omitted)).  Plaintiff's complaint suffers from the *post hoc*, *ergo propter hoc* fallacy: Plaintiff suffers from a physical or mental condition; Plaintiff experienced adverse employment actions; Plaintiff therefore suffered adverse employment actions because of his physical or mental condition.  That faulty syllogism is insufficient to state a claim for relief.  *See, e.g.*, *Natofsky*, 921 F.3d at 351–52 (dismissing plaintiff's disability discrimination pleading under the Rehabilitation Act, because he "points to no evidence that [employer's] critique of his email responsiveness was based specifically on [plaintiff's] failure to respond to emails during meetings, as opposed to a more general critique of his timeliness in responding to emails"); *Byfield v. N.Y.C. Dep't of Educ.*, 2022 WL 3141884, at *4 (S.D.N.Y. Aug. 5, 2022) (stating that without "facts showing that plaintiff's disability was at least a motivating factor," "it appears that Plaintiff is merely dissatisfied with [the employer's actions]"); *McManamon v. Shinseki*, 2013 WL 3466863, at *10 (S.D.N.Y. July 9, 2013) (dismissing a *pro se* plaintiff's pleading under the Rehabilitation Act, because he "pleads no facts beyond that those persons knew that he had [the alleged disability], and thus no facts that plausibly allege that it was a reason he was not hired").

## II.     Plaintiff's Retaliation Claim Under the Rehabilitation Act

"Like many other federal anti-discrimination provisions, the Rehabilitation Act also prohibits retaliation against a person for opposing any practice made unlawful by the Act."  *Ford v. New York City Bd. of Educ.*, 2022 WL 1063036, at *6 (S.D.N.Y. Apr. 8, 2022) (quoting *Dodd v. City Univ. of N.Y.*, 489 F. Supp. 3d 219, 245 (S.D.N.Y. 2020)).  Claims for retaliation under the Rehabilitation Act are analyzed under the same *McDonnell Douglas* framework as retaliation claims under Title VII.  *See Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002).  To state a claim for retaliation under the Rehabilitation Act, a plaintiff must allege that (1) he or she

was engaged in an activity protected under the relevant statute, (2) the defendants were aware of

plaintiff's involvement in this activity, (3) the defendants took adverse action against the

plaintiff, and (4) a causal connection exists between the protected activity and the adverse action.

*See Weixel*, 287 F.3d at 148; *Treglia*, 313 F.3d at 719.  "A plaintiff's burden at this prima facie

stage is *de minimis.*"  *Treglia*, 313 F.3d at 719.

      **A.**     **Plaintiff sufficiently alleges that he engaged in a protected activity and
Defendant was aware of this activity.**

Defendant argues that Plaintiff failed to allege that he was engaged in a protected

activity, because the grievance filed by Plaintiff "did not state or even suggest that Vasquez's

alleged 'harassment' was due to a discriminatory intent."  Dkt. No. 56 at 12.  The Court rejects

this argument.  Plaintiff alleges that Vasquez accorded him unfavorable treatment "due to

[Vasquez's] perception of Plaintiff being disabled."  Dkt. No. 1 ¶ 14.

The clearest example of a "protected activity" is the "filing of a lawsuit alleging unlawful

discrimination."  *Dodd*, 489 F. Supp. 3d at 246.  However, "protected activity may consist of

informal actions such as 'making complaints to management.'"  *Hatch v. Brennan*, 792 F. App'x

875, 879 (2d Cir. 2019) (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 317 (2d Cir.

2015)).  "[I]mplicit in the requirement that the employer [has] been aware of the protected

activity is the requirement that it understood, or could reasonably have understood, that the

plaintiff's opposition was directed at conduct prohibited by the Rehabilitation Act."  *Hatch*, 792

F. App'x at 879 (alteration accepted) (quoting *Galdieri-Ambrosini v. National Realty & Dev.

Corp.*, 136 F.3d 276, 292 (2d Cir. 1998)).

Here, Plaintiff alleges that he filed a grievance against Vasquez for "her constantly rude

and disrespectful and unfair behavior towards him."  Dkt. No. 1 ¶ 13.  This alone "fail[ed] to

mention a protected class or in any way imply that [p]laintiff-[a]ppellants were protesting

discrimination based on such a protected class." *Hatch*, 792 F. App'x at 880.  But during the meeting between Plaintiff and his union representative and Ikoli, Plaintiff requested that Ikoli launch an investigation of Vasquez for treating him unfavorably due to her perception of Plaintiff being "disabled."  Dkt. No. 1 ¶ 14.  The grievance and request are sufficient to put Defendant on notice that Plaintiff was complaining about alleged discrimination due to disability.  *Hatch*, 792 F. App'x at 879; *cf. Collins v. City of N.Y.*, 156 F. Supp. 3d 448, 458 (S.D.N.Y. 2016) (holding that a plaintiff sufficiently alleged protected activity when she complained about her supervisor's conducts "that, if true, would violate Section 504 of the Rehabilitation Act").

     **B.**    **Plaintiff sufficiently alleges that he suffered from an adverse employment action.**

Defendant argues that "Plaintiff fails to allege that any materially adverse action was taken against him," because "[s]everal courts have held categorically that reprimands or negative performance reviews do not constitute materially adverse actions for purposes of retaliation." Dkt. No. 56 at 12–13 (citing *Witkowich v. U.S. Marshals Serv.*, 424 F. App'x 20, 22 (2d Cir. 2011); *Ragin v. E. Ramapo Cent. Sch. Dist.*, 2010 WL 1326779, at *17 (S.D.N.Y. Mar. 31, 2010)).  The Court declines to take a categorical approach and rejects this argument.

An adverse employment action, for purposes of retaliation, is an action that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe R.R. Co. v. White*, 548 U.S. 53, 68 (2006) (citation omitted).  This definition "is not limited to discriminatory actions that affect the terms and conditions of employment."  *Id.* at 64.  Therefore, the fact that a particular employment action might not rise to the level where it would support a discrimination claim does not mean that it would be insufficient to support a claim for retaliation.  "The standard for an 'adverse employment action' in a retaliation claim . . . is not as demanding as it is in a discrimination claim."  *Smith*, 2019 WL

6307471, at *11 (quoting *Quadir v. New York State Dep't of Labor*, 39 F. Supp. 3d 528, 542 (S.D.N.Y. 2014)). Still, "[t]he antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *White*, 548 U.S. at 67. "[P]etty slights, minor annoyances, and simple lack of good manners" that are the ordinary risks of an employment relationship do not normally constitute adverse employment actions for purposes of a retaliation claim. *Id.* at 68. Rather, the action must be "materially" adverse and "[c]ontext matters." *Id.* at 69.

The Second Circuit has held that, for pleading purposes, an allegation that the plaintiff "received a negative performance evaluation" after he engaged in protected activity "plausibly states a claim of retaliation." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 91–92 (2d Cir. 2015); *see also Pistello v. Bd. of Educ. of the Canastota Cent. Sch. Dist.* 808 F. App'x 19, 22–23 (2d Cir. 2020) (holding that "multiple disciplinary reprimands" avoided summary judgment on the question of "material adversity"). Plaintiff alleges that, a little over a week after a meeting concerning his grievance, he was issued a "bogus reprimand" and a "unfavorable and inaccurate mid-year review" on the same day. Dkt. No. 1 ¶ 15. The reprimand, in particular, was formal and written, concluded that Plaintiff violated SSA policies, and notified Plaintiff that "any further instances of misconduct may result in more severe disciplinary action, including suspension or your removal from the Federal service." Dkt. No. 57-2 at 1–2. Plaintiff was given the right to grieve the disciplinary sanction. *Id.* at 2. The implication is plain that the reprimand itself, unlike a verbal warning, constituted a form of disciplinary action. Combined with what Plaintiff alleges was a negative performance review, it is plausible that Plaintiff was faced with an adverse employment action. *See Smith*, 2019 WL 6307471, at *11 ("It is well established that a negative performance review can constitute an adverse action for purposes of a retaliation

claim, even though this conduct would not support a charge of discrimination." (internal quotation marks and citation omitted)).

### C.   Plaintiff sufficiently alleges a causal nexus between Plaintiff's protected activity and the alleged acts of retaliation.

Defendant also argues that Plaintiff fails to allege the causal nexus between Plaintiff's protected activity and the alleged acts of retaliation, because he "makes no direct allegations of retaliatory animus" nor allegations that "particular acts of supposed retaliation were temporally linked to protected activity."  Dkt. No. 56 at 14.

In the retaliatory context, the Second Circuit has "not drawn a 'bright line' as to exactly when a temporal relationship supports a finding of a causal relationship."  *Hayes v. Dahlke*, 976 F.3d 259, 273 (2d Cir. 2020) (citing *Gorman-Bakos v. Cornell Coop. Extension*, 252 F.3d 545, 554 (2d Cir. 2001)); *see also id.* (contrasting a case in which five months supported an inference of a causal connection with another case in which three months weighted against such a finding). But "[c]lose temporal proximity between the plaintiff's protected action and the employer's adverse employment action may in itself be sufficient to establish the requisite causal connection between a protected activity and retaliatory action."  *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 552 (2d Cir. 2010); *see also Treglia*, 313 F.3d at 720 ("[A] close temporal relationship . . . can be sufficient to establish causation.").

Here, Plaintiff alleges that fewer than ten days after Plaintiff requested an investigation of disability discrimination on or about April 22, 2019, his employer issued Plaintiff a "bogus reprimand" and "an unfavorable and inaccurate mid-year review."  Dkt. No. 1 ¶¶ 14–15. Moreover, Vasquez, the same supervisor that Plaintiff alleges as "consider[ing] him to be disabled," issued the reprimand and the performance review.  *Id.*  The two combined allows the Court to infer at this stage that there is a causal nexus between Plaintiff's protected activity and

16

the alleged acts of retaliation.  *See Timmer v. City Univ. of N.Y.*, 2021 WL 3603465, at \*16 (E.D.N.Y. Aug. 13, 2021) (holding that the plaintiff sufficiently alleged the causal nexus in a Rehabilitation Act retaliation claim when the plaintiff was suspended 11 days after complaining about defendant's failure to accommodate his disability); *Payson v. Bd. of Educ. of Mount Pleasant Cottage Sch.*, 2017 WL 4221455, at \*25 (S.D.N.Y. Sep. 20, 2017) ( "[T]he two month temporal proximity between the advocacy and the adverse employment action is sufficient for a reasonable factfinder to find causation.").

## III.   Plaintiff's Claim Under Title VII

Plaintiff purports to allege a claim under Title VII.  Title VII, however, protects only "victims of race-based, ethnic-based, religion-based, or gender-based discrimination." *White*, 548 U.S. at 66.  It does not protect against discrimination on the basis of disability.  *See Risco v. McHugh*, 868 F. Supp. 2d 75, 107 (S.D.N.Y. 2012) ("Title VII does not prohibit discrimination on the basis of disability.").  It is for that reason that Congress passed the Rehabilitation Act and the ADA.  *See* 42 U.S.C. § 12101(a)(4).  Plaintiff does not allege that he was discriminated against based on his race, ethnicity, religion, or gender.  Accordingly, he does not state a claim under Title VII.  The claim is dismissed with prejudice.

## IV.   Leave to Replead

Because Plaintiff is proceeding *pro se*, this action "should not be dismissed without granting leave to replead at least once" if a liberal reading of his complaint "gives any indication that a valid claim might be stated." *Barnes v. United States*, 204 F. App'x 918, 919 (2d Cir. 2006) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)).  However, the Court need not grant leave to amend where it would be futile.  *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

Here, it is possible that Plaintiff can allege additional facts, showing that he was a

qualified person with a disability and that he suffered an adverse employment action as a result of his alleged disability.  The Court therefore grants Plaintiff leave to file an amended complaint repleading his discrimination claim under the Rehabilitation Act.

**CONCLUSION**

Defendant's motion to dismiss is GRANTED IN PART and DISMISSED IN PART. Plaintiff's discrimination claim under the Rehabilitation Act is dismissed without prejudice.

The Clerk of Court is respectfully directed to close Dkt. No. 55.


SO ORDERED.


Dated: June 8, 2023
   New York, New York         _____
                   LEWIS J. LIMAN
             United States District Judge